Summershaw appearing for appellant, Melissa Davis-Lowe appearing for appellee. Ms. Shaw, do you wish to reserve any time for rebuttal? Yes, Your Honors, I would reserve five minutes. Okay, thank you. You may commence. Thank you. Good morning, Your Honors. May it please the Court, my name is Summershaw. I am here today representing appellant Michelle McKee. The debtor in the Chapter 7 bankruptcy filed February 10, 2021. I know that the Court has, that Your Honors have thoroughly reviewed our briefs, and so I also am not going to rehash what has been written before you, and I'm really here to answer your questions, but I just wanted to say that I really think this case comes down to whether our laws, specifically our California Homestead Exclusion Law, require that an individual in an abusive relationship, or even just an extremely unhealthy, toxic one, must stay in a home in order to endure whatever it is they must endure to keep their rights in their homestead exemption. And I think that this issue about the objective versus the subjective test is extremely important to whatever Your Honors decide today, because in a situation where an individual is in an abusive relationship, it is often not apparent to society. There is no evidence of what is going on, and to require that there be some type of evidence like that in order for a debtor to prove that they should still retain their homestead exemption, even though they've left the home, it just doesn't work in the confines of these types of circumstances. So counsel, are you suggesting then that the court was bound to accept the testimony of your client irrespective of any other evidence that didn't support that conclusion? Absolutely not, Your Honor. There was ample evidence in the record that did show that this type of abuse was going on. I'm not worried about the abuse. What I'm worried about is the intent is that we always intended to retain this residence, always intended to reside there. And the question is, could the court reject her plea that there was abuse and that was the basis in favor of other evidence that suggested it was an economic choice that she had made? I mean, I hope not. I hope that the law is decided that in this type of situation, as long as there is some impossibility of returning to the home, economic or otherwise, that she would have the right to retain her homestead exemption. Well, let's tease that out a little bit, because I understand the point you're making. And certainly in California law going back to the 1800s, there's case law that talks about situations where people are removed from the home or removed from the home because of violence for various things. But here, the record wasn't wholly consistent with that view. You have the home zoned by three parties. She agrees to vacate. She cuts an economic deal, and she retains another residence and changes her driver's license. So isn't that all evidence that could be considered? Yes, Your Honor. It absolutely could be considered. The counterpoint in this case, I believe, is that she retained title and that she had to take those steps. Just like anybody in an abusive relationship must take steps to leave and do these things to continue on with their life until there is some disposition of the asset or separation of the asset so that they get their homestead exemption funds and are able to reinvest them into a new home. I mean, no matter what happens in any of these situations, you know, in divorce actions is the analogous situation. Somebody leaves. Somebody changes their driver's license and moves on with their life and has to wait until the disposition of the asset is separated so that they can then buy something else. And they're protected by statute. Yes, Your Honor. And that's one of the things I wholly understand. My client was not married to this other person. But I believe that the statute clearly shows the intention and the cases that came before that statute shows the intention that as a society, we do not want to force people to stay in these situations so that they may retain their homestead exemptions. And I think you make a policy argument that's very compelling, to be honest. But it's not exactly, I'm not even sure we're the right people to make that argument, too, in terms of the confined space in which we have to consider it. Because let's talk about California law. California law has also very expansively expanded the rights in some areas of married people to non-married people living in domestic relationships that have the look of a marriage, a Marvin situation, for example. And we don't have that same, is there any case law that suggests that this law has been so interpreted? Any California case law where any California court has said, we know that that statute speaks exclusively in terms of spouses, but we're going to apply it in a domestic partnership relationship? That's a good question. I was not able to find that anywhere. The only analogous situation I could find in that situation is that even after a divorce, when two people are completely unmarried, the court still allows the divorced couple to retain their homestead exemption. But no, I was not able to find any case law in that situation. Okay, because I think that's the, you know, California does have those strong policies, and it seems as though the legislature has spoken, and there maybe needs to be a change in the law, an expansion of that law at the California level. I just don't know whether we're really the people to do it. But it's an important point. Sorry. No, counsel, I guess I'm also curious about the statute appears to have some temporal limitation to it, and that is that this presumption that you left under these circumstances exists for a period until the property is disposed of or the divorce is completed. It would seem that that would be for a limited period, and this relationship had been disintegrated, and she hadn't lived in that location for some period of time beyond this immediacy that's required because she's fearful of her ability to remain. And so I just wondered if you would comment on that. Yes, thank you. Most of the cases that involve this type of issue where debtors must leave their home, whether it's because of a spouse and or some dangerous issue that's arisen in the home. Years pass. I mean, you know, I know Moss is very old, but she was gone for three years. So it was. I don't think there's any base, at least on the case law, that there's any temporal requirement that something be done immediately. But here the debtor did do something immediately. She signed that settlement agreement because she needed to take action to proceed to obtain her homestead exemption. And it has only been the, you know, breach of the… Isn't it really more of her economic investment than it is her homestead exemption? In other words, you're characterizing it as that. But really what she wanted to recover was that she bought into the property. She was a part owner, and she wanted her value out of it. That's what she was looking for. Not that she wanted to live there, not that she cared about whether it was that location or a different location. She wanted the money, and that's what we're struggling with. Well, and I understand that argument, but I think that's what happens in any situation where a homestead exemption is tied up. Well, couldn't she have—I mean, she was a lawyer, right, or is a lawyer, correct? Yes, Your Honor, they both were. Yeah, so, I mean, part of the thought is how difficult would it have been to have a line in that agreement that notwithstanding that I am leaving possession of the home, I'm retaining my right to return to the home if you don't want it, if we can't sell it, if I'm retaining my homestead, and to not establish another homestead in the meantime. I mean, I think that's what the struggle is, and to the extent we do anything for the broader principle, it may be to make that point that if you're going to do this and you don't have the protection of that statute, you need to be manifest about I'm retaining my homestead interest. Versus I just want to get paid. Right. At the end of the day, give me my fair share, which is what this agreement seemingly could be interpreted as, unless you can give me a different view. Yes, Your Honor, I absolutely wish there was a line in there that said that. It would have made all of our jobs a lot easier. Although, based on the trustee's arguments, I don't know that that would have changed anything, because, again, that is just a statement, just as the debtor states now that it was her intention to take that money and use it to buy a new home. But it absolutely would have been much more helpful. All right. Well, you're right below your five minutes. Do you wish to reserve the rest of your time? Yes, unless Your Honors have any other questions for me at this point. Not at this point. All right. Thank you. Thank you, Your Honors. All right. Ms. Love. Thank you. May I commence, Your Honors? You may. I see the clock. Thank you. Good morning, Your Honors. May it please the Court. Melissa Lowe of Shulman, Bastian, Friedman & Bowie, LLP. I represent Carl Anderson, the Chapter 7 trustee in the bankruptcy case. As we've been talking about, and just at the end of Ms. Shaw's arguments, the focus here really is the debtor's intent. That's what the case law tells us. And the debtor needed to have a continuous intent to reside at the property. And that intent is still on the petition date. It seems to me throughout this process that the debtor has perhaps changed her intent over time. It's hard to understand exactly what her intent even was. And that makes her claim at this point that she had that intent specious at best. On the one hand, she seems to claim that her intent, according to the agreement, certainly, and even in the evidence presented and the debtor's testimony herself, is she wanted the property sold. She left the property. She wanted it sold, or she wanted her interest bought out. But isn't that kind of like the question? Because, I mean, okay, I can't live with you anymore. But there's a question, and this is the problem. This question probably should have been asked in the process and answered directly, which is, but if you move out, I'm back there. If it's safe for me to live there, I'm back there. If it doesn't sell, and, you know, the mere fact that you— I don't think there's a question that under California law, if you believe you're unsafe in a place and you leave that place and you don't have a fixed intent not to return, you retain your homestead. And I think that's been the law for over 100 years. Do you disagree with that? No, Your Honor, but I think that's the debtor's stated intention now. And the judge found to the contrary. This really gets back to a factual finding of state of mind, correct? Yes, Your Honor, but the concrete evidence here, and not just the debtor's stated intention, overwhelmingly demonstrated the debtor did not intend to reside at the property. Your Honor's touched on some of these, but she moved out five years ago. She entered into long-term leases at a different residence. How long-term? How long-term? I believe the leases she entered into were a year and then were automatically renewed. Well, that's not long-term. I'm going to just say I think that characterization's inapt. She did stay at the same property when she moved. Since she moved out, she's been at the same property. Okay. I'll say that. She took all her belongings away from the property. She did not have any family remaining there. She didn't visit the property. The locks were changed, and the biggest one that we've been talking about, she signed an agreement where she agreed to the sale, excuse me, the property being sold or her interest bought out, and the debtor asked about that on multiple occasions. She inquired of her ex, hey, when's this property being sold? When are you buying out my interest? The bankruptcy court in his findings stated it's clear. The objective evidence is clear. She intended, based on her actions, the documentary evidence, to move out and to not come back. That's because the other person was staying there with the intent to stay there. So the situation hasn't changed. I mean, unfortunately, as Judge Taylor indicated, if they were spouses, it would be the exact opposite result, but they're not spouses. But the situation for which 704.720, it's here. You're right, Your Honor. But you're right. You're right on all counts. They were not spouses. They could have been. They could have formed a civil union many years ago. They could have been spouses. They weren't. They, as I believe either Ms. Schall or one of your – Civil union have been enough under the statute? I don't know, Your Honor. I don't know. But they didn't even do that, is my point. They chose to simply cohabitate. They're attorneys. They're intelligent people. If they wanted those rights and if the debtor was truly considering – Would it have changed the situation? Would it have changed the situation if she had commenced some legal action? Some legal action, Your Honor, to – Partition. Partition, to remove her and put her into the place. If she had taken some legal action in advancing her interest of possession and hence residency. Sure, Your Honor. I think it depends on what the action was. Well, that's the problem. I thought you meant – That's the problem, isn't it? It's speculative. It's speculative. And if it were an action to – I mean she could have brought an action to enforce the agreement. But that's the consequence of the situation, right? Because it sounds like – And you dispute the factual, but at the very inception of this problem, there was a decision who stayed, who left, right? Right. And there's no evidence as to why that was done and why one left. Well, except that the property was owned two-thirds by the allegedly abusive spouse and the allegedly abusive spouse's mother. But that gets – So that's the problem here. There's not much that she could have done, which is Ms. Shaw's point. But your point is that that doesn't matter because she is not a spouse. Right. She's not a spouse. It also becomes a problem that you say she could have stayed or she could have litigated it. She chose not to. What she wanted was not to live there. She wanted the money. Well, that's what the bankruptcy judge concluded. Well, no, but that – yeah, that's what I'm just saying. I agree. That's the ultimate thing we have to decide is if he was right, but that's, I think, where – Or whether he abused his discretion. I don't think I have to conclude he's right. Correct. Correct. Whether there was evidence to support his decision or not. Right. Right. Right. It's speculative. I was going to bring this up later. The debtor argues she lost out on her ability to invest in a new homestead. Again, it's speculative. Maybe she could have brought some action to force the sale of the property, but she didn't do that. And she had four years. She moved out of the property about five years ago. This agreement was signed about four years ago. She had time to do something to show what her intent was because, again, the evidence here, other than the debtor's own testimony, is that she intended to move out and did not intend this as her homestead. The bankruptcy court – I'm trying to find the exact language – said, the only evidence that slightly supports her claim of homestead exemption is just her testimony, subjective belief that this is her homestead. I highly doubt that, you know, what this court wants, based on the intent requirement here, is for that to be the only evidence. The debtor's own self-serving testimony – I don't think so. I think it would be. But I think even in most of the cases – maybe not all because I don't want to speak out of turn – but most of the cases, even when they separate, there's still some connection of both spouses to the property. Their children may be living there. Sometimes at least – well, I'm sorry. The statute doesn't limit it to that. The statute says if the spouse leaves the home under fear of – you know, in my words, fear of violence, which is a broad term, then you don't waive homestead until the divorce. We're not talking about that statute, but I'm just saying when you say what we want, I'm not sure that in an abusive situation I want a spouse to have to continue to stay – or a non-spouse to have to stay in an abusive home in order to preserve their homestead. I definitely don't like that. The question here, though, is whether the bankruptcy judge had enough evidence to say that testimony wasn't enough and to include the other way. So I think what you're experiencing here is, at least with me, is I'm very resistant to the arguments you're making that say that this panel should endorse a situation where an abused man or woman has to stay in property to keep a homestead exemption. I'd focus on why should we not reverse because the judge had enough. Okay, Your Honor. The judge had enough here to deny the homestead because it's not enough for a debtor to claim the intent to make the property your homestead. It has to be demonstrated by the evidence, and the evidence here documents the debtor's actions, the agreement she signed, all point to her having no intention to make the property or keep the property as her homestead. She moved out. She signed an agreement where the locks were changed. The agreement had nothing in it that said, I can come back, or I reserve the right to potentially buy this out or come back. She changed her driver's license. She didn't pay any expenses toward the property. She lived somewhere else for four years. Everything that she did, there was no contingency in the property for her to remain there or to return. And the debtor asked multiple times, where's the sale? Where's the buyout? I want my money. There's nothing here in the evidence other than her testimony that says she intended this to be her homestead exemption. So I believe that the bankruptcy court overwhelmingly was correct in weighing that evidence, applying – well, I don't think the bankruptcy court was clear whether he was applying an objective or a subjective standard. Certainly, as I'm sure you've seen in the briefs, the trustee believes the standard is objective based on the case law, especially the recent case of In-Ray Bangu that came out. And in applying that, the bankruptcy court rightly held that the homestead exemption should be denied. Even if this were subjective, though, I still don't think there was enough here because, again, really the only evidence the court had was the debtor's testimony. I know we talked in the briefs about the Diaz case, which I think even the bankruptcy court mentioned. The Diaz case expanded maybe where the homestead exemption could be applied, and maybe it's the outer reaches, at least in California, where it will be applied. But Diaz even is distinguishable. In Diaz, the debtor left the property in the hands of his family, people he trusted. And so the debtor, if he got better, which I understand it was a remote possibility, but if he got better, he could return there. He had belongings there. He had family there. The debtor says, it's impossible for me to return. And I understand what Your Honor is saying about getting out of an abusive situation, but if it really is impossible to return, I don't think even Diaz would allow the homestead exemption. And, again, in Diaz, remember, that case didn't allow the homestead exemption. It said the BAP remanded to the bankruptcy court for the bankruptcy court to determine whether the debtor really did have the requisite intent at all times to return if he could. The bankruptcy court here made that determination and found that the evidence presented to him, the documentary evidence, the actions, what he really had in front of him, outweighed the debtor's statement now, five years after she left, that she wanted that to be her property. Excuse me, that she wanted that property to be her exemption. But the agreement, all the other evidence, I won't reiterate it now, it really spoke to, she left, she wanted her money, she wanted the property sold, she wasn't coming back then. So, counsel, let me just ask you a question that's along the same vein that just occurs to me, and that is that in the cases where the hostility existed and the debtor or the debtor left the property, the case of Moss or the one where there was an abusive situation, in other words, we have an extensive period of time here. There's no doubt that there was abuse at some point. Is it clear from the record that the judge would conclude that there was such violence that occurred and it was ongoing violence that would prevent her from seeking at all to come back, to negotiate a way to try to return to the property, to do something to live in that premises again or to get the other person to leave the premises? Do you know what I'm trying to say? I'm not sure if that evidence was, did it ultimately conclude that the only reason she wasn't there was because there was violence or was it her choice? Your Honor, I don't think the bankers here was clear on his finding in that, and I'm glad you brought that up because I was actually going to touch on that, that in the trustee's mind, it is clear. This was at the end, at least, because they were together for almost 20 years, maybe 15. They were together for a long time. In the end, it was hostile. There was yelling. There was screaming. But the witnesses are, and the testimony by the witnesses, are a little questionable. The debtor's witnesses, of course, say it was all her partner. She was the only one yelling. And then, of course, there was one witness I think that the partner put on that said, well, they both yelled at each other. And, in fact, one of the witnesses, and I apologize, I don't remember which one it was, but the only evidence we had of any actual physical abuse was on the partner. One of the witnesses said she came in and there was blood on the partner, not on the debtor. And, look, I'm not saying abuse of any kind is okay, but I think there was insufficient evidence in the record of the abuse really forcing her out. Maybe that was part of it. She clearly wanted out of the relationship, no question. But I think there was insufficient evidence in the record that that was really the reason or the only reason. This, to me, was they broke up. It was not a good situation. I want to break up with her, and let me get the best deal I can and get my interest in the property. I see that I'm over my time. Thank you very much, Your Honors. I appreciate your time. Thank you very much. Thank you. Thank you for allowing me to appear by video. Okay. All right, Ms. Shaw, you have four minutes and 13 seconds. Thank you, Your Honors. So what was just stated, it was a long time ago, but it was not a representation of what the testimony actually said. The witnesses on both sides said it was as bad as it could possibly be, and the judge found that it was as bad as it possibly could be between these two people. He also found that it was impossible practically or as a legal matter for the debtor to return to her residence, and that's in ER 4 at page 255, line 13 through 15, and various other places in the record. So the court found that it was impossible for her to return, that it was not safe. Ellen, can I stop you? Because I'm probably responsible for driving this towards the abuse, but I want to raise one. What I see is probably the biggest problem for your client in terms of the evidence, because, again, the question isn't, as a policy matter, what should the State of California do? The question isn't us trying to solve the intractable problem of two people who, you know, that thin line between love and hate and what happens sometimes when those two cross over. It's whether the judge had enough, and one powerful piece of evidence supporting that she did not intend to maintain this as a homestead was that she did not pay anything. Is that correct? I mean, she was not only not in physical possession of the home, but her portion of the proceeds was fixed, notwithstanding that she wasn't continuing to support the maintenance of value in the home. Yes, Your Honor, that is correct. She did not pay anything. She was never asked to pay anything because the other partner and the second third of the ownership of the home, they retain complete control and use of the home. So she was never asked to, and there is no evidence that she was asked to pay anything. But you are correct. She did not pay anything. And the agreement didn't require her to do that. Correct. It did not. She was getting a portion of the proceeds, whatever they were, notwithstanding that they had to continue to support the value of the home. Correct, Your Honor. That is exactly what the agreement said. And back to this issue about, well, the locks got changed and she moved. And, you know, again, that is exactly what happens when someone flees their home and can't go back. And that's all we're asking is that this court find that when it is impossible for someone to return to the home, that they still retain their homestead exemption until or unless something else happens. And here, you know, someone brought up a partition action. A partition action is extremely expensive. And to put upon a debtor that they must spend hundreds of thousands of dollars to demonstrate that they want their interest in a home, which would result in the same thing that occurred through the settlement agreement. And that's what, you know, the debtor thought she was doing. She thought she was getting her interest in the home and that she would have that interest. And the delay in having that agreement finalized and gone through is ultimately what resulted in her not receiving it. But she still, the settlement agreement is like the burning of a house. You know, something else must now take place for the debtor to retain, to use the proceeds from the homestead exemption or to return to the house that has to either be rebuilt or the property must be sold and the funds must be reinvested into a new home. You're hearkening back to Moss, which is an interesting case. And you're right, the home was burned and the cattle were stolen and the Native Americans weren't happy. But the difference, I think, is there was no legal document where Ms. Moss evidenced any desire to sell it, to be perfectly frank. She never, you know, and that's a really old case and we can talk a lot about her relative power versus your client's power and different things. So I think that's the troubling part for me. But I thank your honors. My time is up. Thank you very much. This is well argued and it's, as you can see, it's a tough issue in the broad sense. Even if, but I think the lens through which we view it may be more narrow. So with that, but good job for everyone. And I would suggest that the Appellate's Council start advocate with the California legislature for a change in the statute. Thank you very much, your honors. Thank you. Thank you, your honor.
judges: Taylor, Spraker, Gan